# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **2:15-cv-05311-JGB (SPx);** 2:15-cv-05312; 2:15-cv-05313; 2:15-cv-05314; 2:15-cv-05316; 2:15-cv-05309; 2:15-cv-05318; 2:15-CV-05319; 2:15-cv-05320; 2:15-cv-05326; 2:15-cv-05327; 2:15-cv-05330; 2:15-cv-05331; 2:15-cv-05334; 2:15-cv-05335; 2:15-cv-05340; 2:15-cv-05336; 2:15-cv-05339; 2:15-cv-05342; 2:15-cv-05344; 2:15-cv-05345; 2:15-cv-05349; 2:15-cv-05352; 2:15-cv-05353; 2:15-cv-05354; 2:15-cv-05355; 2:15-cv-05357; 2:15-cv-05359; 2:15-cv-05360; 2:15-cv-05361; 2:15-cv-05362; 2:15-cv-05363; 2:15-cv-05364; 2:15-cv-05365; 2:15-cv-05366; 2:15-cv-05367; 2:15-cv-05368; 2:15-cv-05369; 2:15-cv-05370; 2:15-cv-05372; 2:15-cv-05373; 2:15-cv-05374; 2:15-cv-05375; 2:15-cv-05376; 2:15-cv-05377; 2:15-cv-05378; 2:15-cv-05379; 2:15-cv-05380; 2:15-cv-05381; 2:15-cv-05383; 2:15-cv-05384; 2:15-cv-05386; 2:15-cv-05387; 2:15-cv-05388; 2:15-cv-05389; 2:15-cv-05390; 2:15-cv-05391; 2:15-cv-05392; 2:15-cv-05393 | Date | August 24, 2015 |
| Title | *In re Johnson and Johnson cases* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendants: |
|---|---|
| Paul R. Kiesel Melanie Palmer Kiesel Law | Joshua J. Wes |

**Proceedings:    Order DENYING Plaintiff's Motion to Remand and GRANTING Defendant's Motion to Stay**

   Before the Court are Plaintiff's motion to remand the action ("MTR") and Defendant Ethicon LLC's motion to stay the action ("MTS"). For the reasons below, Plaintiff's motion to remand is DENIED and Defendant's motion to stay is GRANTED.

CIVIL MINUTES—
GENERAL

## I. BACKGROUND

On December 30, 2013, 67 individual plaintiffs filed a joint complaint in California Superior Court against Defendants Johnson & Johnson; Ethicon, Inc.; Ethicon LLC; and Does 1 through 500, inclusive (collectively, "Defendants"). (Doc. No. 1 ("Removal Notice") ¶ 1; Case 2:14-cv-00899-JGB, Doc. No. 7 Ex. A ("Complaint") ¶¶ 3-69; but see Complaint ¶ 1 (alleging there are 66 plaintiffs).) It was assigned case number BC531848. (Complaint at 1.) The complaint alleges that the plaintiffs suffered a variety of injuries from the surgical implantation of pelvic mesh devices manufactured by Defendants. (Complaint ¶¶ 1, 93-95, 105-40.) The plaintiffs are citizens of various states, including California, New Jersey, and Arizona. (See, e.g., id. ¶¶ 6, 13, 22.) The complaint alleges that all named defendants are citizens of New Jersey.[1] (Id. ¶ 76.)

On February 5, 2014, Defendant Ethicon, Inc. removed BC531848 to this Court on the basis of diversity jurisdiction. (Case 2:14-cv-00899-JGB, Doc. No. 1 ("BC531848 Removal") ¶ 4.) On February 13, 2014, the plaintiffs moved to remand the action to state court, contending that complete diversity was lacking because there were both Plaintiffs and Defendants from New Jersey. (Case 2:14-cv-00899-JGB, Doc. No. 9.) On March 12, 2014, this Court remanded the action to state court for lack of subject matter jurisdiction, due to the lack of complete diversity under 28 U.S.C. § 1332(a). (Case 2:14-cv-00899-JGB, Doc. No. 32.)

Upon remand to state court, Ethicon, Inc. moved to sever the plaintiffs' individual claims into individual actions. (Doc. No. 1 ("Removal Notice") ¶ 3.) On June 22, 2015, Ethicon, Inc.'s motion to sever was granted. (Id. ¶ 4.) BC531848 was severed into 67 separate actions. (Id. ¶ 5.) Upon severance of the claims into individual actions, the 64 actions that did not have a plaintiff from New Jersey were removed to this Court on July 15, 2015. (See generally Removal Notice.) The removal was effectuated by Defendant Ethicon LLC ("Ethicon"), who at the time of the second removal had yet to be served by the plaintiffs. (Id. ¶ 6.) Fifty-nine of the 64 individually removed actions, including this one, were then related to former case 2:14-cv-00899-JGB and reassigned accordingly.[2]

Plaintiff requests that the Court remand this action to state court. Ethicon requests that the Court stay this action pending a determination by the Judicial Panel on Multidistrict Litigation whether to transfer this case to the Southern District of West Virginia.

A motion to remand and a motion to stay are pending in each of the 59 related cases. The Court held a hearing on August 24, 2015, at which counsel for the 59 plaintiffs and counsel for Ethicon stipulated that the 59 related cases are substantially identical for purposes of the pending motions. Accordingly, counsel agreed that the Court's disposition

---

[1] It appears that Defendant Ethicon LLC is actually a citizen of Ireland (see Doc. No. 1 ("Removal Notice") ¶ 20), but the distinction is irrelevant to the parties' jurisdictional disputes.

[2] Five of the 64 cases—2:15-cv-05315-PA, 2:15-cv-05317-PA, 2:15-cv-05371-PA, 2:15-cv-05382-PA, and 2:15-cv-05385-PA—were remanded to state court before reassignment occurred.

**CIVIL MINUTES—GENERAL**           Initials of Deputy Clerk MG
Time: <u>00:42</u>

of the pending motions in any one of the 59 related cases should control the other cases as well.

## II.      LEGAL STANDARD

### A.   Removal

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).[3]

Ethicon contends this Court has original jurisdiction on the basis of diversity of citizenship. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties." § 1332(a)(3). In determining whether an action is removable on the basis of diversity jurisdiction, the Court disregards the citizenship of "Doe" defendants. § 1441(b)(1).

"A defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." § 1446(a). Where, as here, "a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." § 1446(b)(2)(A).

Once a defendant has been served and has received a copy of the complaint, the defendant has 30 days to effect a removal. § 1446(b)(1); Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999) ("A named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

If a defendant fails to remove an action within 30 days of service, but "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). However, "[a] case may not be removed under subsection (b)(3) on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c).

---

[3] Subsequent references to section numbers refer to Title 28 of the United States Code unless otherwise noted.

**CIVIL MINUTES—
GENERAL**

Initials of Deputy Clerk MG
Time: <u>00:42</u>

B.   **Stay**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). District courts generally consider three factors when deciding whether to grant a stay pending transfer to another court: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation" if the case is transferred. Id.

### III.   DISCUSSION

A.   **Remand**

Plaintiff requests that this action be remanded to state court. Plaintiff appears to concede that the amount in controversy exceeds $75,000[4] and that there is complete diversity between the parties.[5] Notwithstanding this, Plaintiff contends it was improper to remove the action.

Plaintiff raises two arguments in support of her motion to remand. First, she contends that this action falls within a judicially recognized exception to the court's subject matter jurisdiction under a doctrine known as the "voluntary-involuntary" rule. Second, she

---

[4] Plaintiff does direct the Court's attention to orders issued sua sponte by Judge Anderson remanding several related cases to state court on the basis that Ethicon failed to demonstrate the amount in controversy. (MTR, Ex. 12 ("Remand Orders").) However, that order was issued before Ethicon had an opportunity to present evidence in support of removal. With respect to the present motion to remand, Ethicon has provided evidence in support of the amount in controversy. (See, e.g., MTR Opp'n, Wes Decl. ¶ 7 ("Jury verdicts in single Plaintiff cases alleging the same injuries and damages as Plaintiff here in the past four years against various transvaginal mesh manufacturers have ranged from $1.2 million to over $73 million.").) Apparently recognizing that the amount in controversy cannot reasonably be disputed in light of Ethicon's evidence, Plaintiff does not raise the argument in her motion to remand. The Court understands this to be a concession that the amount-in-controversy requirement is met. (See also Removal Notice ¶¶ 9-15.) To the extent Plaintiff intended to raise this argument, the Court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000. See § 1446(c)(2)(B).

[5] Defendant Ethicon LLC is a citizen of Ireland; Defendant Ethicon, Inc. is a citizen of New Jersey; and now-dismissed Defendant Johnson & Johnson is a citizen of New Jersey. Plaintiff is a citizen and resident of the United States, but is not a citizen of New Jersey. (See generally Removal Notice ¶¶ 16-21.)

**CIVIL MINUTES—**          Initials of Deputy Clerk MG
                                        **GENERAL**          Time: <u>00:42</u>

argues that Ethicon's removal is untimely pursuant to 28 U.S.C. § 1446(c). The Court discusses each argument in turn below.

### 1.   Voluntary-Involuntary Rule

Plaintiff's primary argument is that this action falls within a doctrine known as the "voluntary-involuntary" rule. This doctrine arises from a series of Supreme Court cases interpreting the federal removal statutes (now codified at 28 U.S.C. §§ 1441, 1446). See Self v. General Motors Corp., 588 F.2d 655, 657-59 (9th Cir. 1978) (discussing the development of the rule). Under the "voluntary-involuntary" rule, the mere fact that a plaintiff may fail to prove or even state a claim against a properly joined non-diverse defendant does not change the fundamental nature of the action, and therefore the dismissal of such a defendant on the merits does not render the action removable:

> The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, . . . whether . . . a case nonremovable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, in invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion.

Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 282 (1918).

The Court notes at the outset that proper interpretation and application of this rule is significantly more complicated and nuanced than either party's briefing acknowledges. The "voluntary-involuntary" rule was developed over a number of cases[6] against a

---

[6] See, e.g., Case of Sewing Mach. Co., 85 U.S. 553 (1873) (interpreting the act of March 2, 1867, 14 Stat. 558); Yulee v. Vose, 99 U.S. 539 (1878) (interpreting the Judiciary Act of 1789, 1 Stat. 79, as well as the act of July 27, 1866, 14 Stat. 306); Removal Cases, 100 U.S. 457 (1879) (interpreting the act of March 3, 1875, 18 Stat. 470); Barney v. Latham, 103 U.S. 205 (1880) (interpreting the act of March 3, 1875, 18 Stat. 470); Blake v. McKim, 103 U.S. 336 (1880); Fraser v. Jennison, 106 U.S. 191 (1882); Louisville & N.R. Co. v. Ide, 114 U.S. 52 (1885); Putnam v. Ingraham, 114 U.S. 57 (1885); Brooks v. Clark, 119 U.S. 502 (1886) (interpreting the act of March 3, 1875, 18 Stat. 470); Plymouth Consolidated Gold-Mining Co. v. Amador & S. Canal Co., 118 U.S. 264 (1886); Powers v. Chesapeake & O. Ry. Co., 169 U.S. 92 (1898) (interpreting the act of March 3, 1887, 24 Stat. 552, as amended by the act of August 13, 1888, 25 Stat. 433); Chesapeake & O. Ry. Co. v. Dixon, 179 U.S. 131 (1900); Whitcomb v. Smithson, 175 U.S. 635 (1900) (interpreting the act of March 3, 1887, 24 Stat. 552, as amended by the act of August 13, 1888, 25 Stat. 433); Kansas City Suburban Belt Ry. Co. v. Herman, 187 U.S. 63 (1902); Geer v. Mathieson Alkali Works, 190 U.S. 428 (1903); Alabama Great Southern Ry. Co. v. Thompson, 200 U.S. 206 (1906); Fritzlen v. Boatmen's Bank, 212 U.S. 364 (1909); Lathrop, Shea & Henwood Co. v. Interior Construction, 215 U.S.

backdrop of ongoing Congressional amendments to the removal provisions at issue.[7] As a result, the holdings of these cases can only be properly applied in light of the textual provisions they interpreted and the specific questions presented for adjudication. Select quotations from the various cases cannot, as Plaintiff's argument would suggest, be blindly applied without regard to the context in which they were made.

To cite only one example of the importance of statutory context, under the removal statute in effect when the earliest of these cases was decided, if an action included a controversy solely between diverse parties, and if that controversy could be wholly adjudicated between the diverse parties without the presence of the non-diverse parties, a defendant could remove that particular controversy to federal court, while leaving the rest of the action in state court:

> This provision is explicit, and leaves no room to doubt what Congress intended to accomplish. It proceeds, plainly, upon the ground . . . that a suit may, under correct pleading, embrace several controversies, one of which may be between the plaintiff and that defendant who is a citizen of a State other than that in which the suit is brought; that to the final determination of such separate controversy the other defendants may not be indispensable parties; that in such a case, although the citizen of another State, under the particular mode of pleading adopted by the plaintiff, is made a co-defendant with one whose citizenship is the same as the plaintiff's, he should not, as to his separable controversy, be required to remain in the State court, and surrender his constitutional right to invoke the jurisdiction of the Federal court; but that, at <u>his</u> election, at any time before the trial or final hearing, the cause, <u>so far as it concerns him</u>, might be removed into the Federal court, leaving the plaintiff, if he so desires, to proceed, in the State court, against the other defendant or defendants.

<u>Barney v. Latham</u>, 103 U.S. 205, 210 (1880) (emphasis in original) (interpreting the act of July 27, 1866, 14 Stat. 306).

Under an even broader provision, passed in 1875, if a separable controversy existed between a defendant and a diverse plaintiff, the defendant could remove to federal court

---

246 (1909); <u>American Car & Foundry Co. v. Kettelhake</u>, 236 U.S. 311 (1915); <u>Great Northern Ry. Co. v. Alexander</u>, 246 U.S. 276 (1918) (interpreting the act of March 3, 1911, 36 Stat. 1087).

[7] <u>See, e.g.</u>, 1 Stat. 73 (1789); 14 Stat. 306 (1866); 14 Stat. 558 (1867); 18 Stat. 470 (1875); 24 Stat. 552 (1887); 25 Stat. 433 (1888); 36 Stat. 1087 (1911); 38 Stat. 278 (1914); 62 Stat. 919 (1948); 104 Stat. 5089 (1990); 125 Stat. 758 (2011).

**CIVIL MINUTES—
GENERAL**

Initials of Deputy Clerk MG
Time: <u>00:42</u>

not only his controversy but the entire action, including claims that would otherwise be non-removable:

> We are of opinion that the intention of Congress, by the [act of 1875], was not only to preserve some of the substantial features or principles of the act of 1866, but to make radical changes in the law regulating the removal of causes from State courts. . . . Both acts alike recognized the fact that a suit might, consistently with the rules of pleading, embrace several distinct controversies. But while the act of 1866, in express terms, authorized the removal only of the separable controversy between the plaintiff and the defendant or defendants seeking such removal,-leaving the remainder of the suit, at the election of the plaintiff, in the State court,-the act of 1875 provides, in that class of cases, for the removal of the entire suit.

Barney v. Latham, 103 U.S. 205, 212 (1880) (comparing the act of July 27, 1866, 14 Stat. 306, to the act of March 3, 1875, 18 Stat. 470).

This latter provision, with minor modifications, remained in effect until 1990, see 104 Stat. 5089, and formed the backdrop against which the "voluntary-involuntary" rule was developed. Thus, even under the Supreme Court's broadest articulations of the "voluntary-involuntary" rule, the rule did not empower plaintiffs to defeat removal simply by joining a non-removable claim with a wholly independent removable claim. Indeed, under the removal provisions then in effect, a defendant needed not await severance of his claim by the state court, but could remove immediately, even over the plaintiff's fervent objections. It was true a fortiori that, if an action were severed by a state court into two separate actions because plaintiffs' individual claims were separable, a diverse defendant could remove one of the severed actions notwithstanding plaintiff's opposition to the severance order.

In order for Plaintiff to prevail on her theory of the "voluntary-involuntary" rule, she would have to show that, when this removal provision was amended in 1990, the amendment not only altered the removal provision itself, but also significantly expanded the "voluntary-involuntary" rule beyond the scope originally articulated by the Supreme Court. The Court is unaware of any controlling precedent to support such an extraordinary interpretation of 104 Stat. 5089.

But Plaintiff's argument fails on a more fundamental level. As the Ninth Circuit recognized in People of State of Cal. By and Through Lungren v. Keating, 986 F.2d 346 (9th Cir. 1993), the "voluntary-involuntary" rule is premised on the notion that

> the plaintiff may by the allegations of the complaint determine the status with respect to removability of a case and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case nonremovable when commenced shall afterwards become removable depends . . . solely upon the form which the plaintiff by his voluntary action shall give to

the pleadings in the case as it progresses towards a conclusion.

Keating, 986 F.2d at 348 (quoting Great Northern Railroad, 246 U.S. at 282).

This basic premise of the "voluntary-involuntary" rule is wholly absent in the present case. Plaintiff never had the power to determine the removability of this action or its predecessor action, BC531848, by the allegations in her complaint. The Court recognizes that, when Ethicon, Inc. first attempted to remove BC531848 to federal court, removal was in fact defeated, even as to Plaintiff's claim. In that limited sense, it could perhaps be said that Plaintiff had the "power" to defeat removal. But to the extent Plaintiff had such a power, Plaintiff did not possess that power in her own right. It was merely derivative of the rights of other plaintiffs in the action—specifically, those plaintiffs who are citizens of New Jersey. It would be more accurate to say that Plaintiff was the incidental beneficiary of a power to defeat removal possessed by the New Jersey plaintiffs.

To the extent Plaintiff ever had the "power" to determine the removability of BC531848, that power relied from the outset on conditions outside Plaintiff's control. If the New Jersey plaintiffs had refused to join BC531848 and instead insisted on instituting their own action, Plaintiff could not have defeated removal of BC531848 by her own allegations. Similarly, if all New Jersey plaintiffs were to reach a settlement with Defendants and dismiss their claims, there is no doubt the case would become removable, notwithstanding Plaintiff's objection that she never voluntarily consented to these settlements.

Thus, the power to defeat removal has been wholly out of Plaintiff's hands from the commencement of this case. That power was held by other parties who voluntarily consented to join Plaintiff's suit. Although Plaintiff benefitted from the New Jersey plaintiffs' power to defeat removal, it does not follow that Plaintiff ever personally held the power to defeat removal herself. Having never personally possessed the power to defeat removal, Plaintiff cannot now assert that "this power to determine the removability of [her] case continues with [her] throughout the litigation . . . ." Id.

It is unquestioned that those plaintiffs who had the power to defeat removal of BC531848 before the state court's severance order still retain that power with respect to their new individual suits. Indeed, those actions are still in state court right now. But it is Plaintiff, not they, who here asserts the "voluntary-involuntary" rule. The Court is unaware of any formulation of the "voluntary-involuntary" rule that guarantees a plaintiff the continuing collateral benefit conferred by former co-plaintiffs, notwithstanding a state court's removal of those plaintiffs. Thus, Plaintiff's purported invocation of the "voluntary-involuntary" rule is an attempt to claim a power held by someone else. Accordingly, this ground for remand must fail.

**2.    Timeliness of Removal**

Plaintiff also argues that Ethicon's removal of this action is barred by § 1446(c)(1), which provides that "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).

Ethicon responds with multiple arguments, including:

1. Ethicon is removing the action under § 1446(b)(1) rather than § 1446(b)(3), rendering § 1446(c)(1) inapplicable;

2. This action was "commenced" less than a year ago when Plaintiff's claim was severed from the claims of other plaintiffs by order of the state court; and

3. Plaintiff has acted in bad faith to prevent removal.

Turning first to whether Ethicon could properly remove this action under § 1446(b)(1), the Court notes that—in sharp contrast to the parties' briefing regarding the voluntary-involuntary rule—the parties have treated this issue as significantly more complicated than it actually is.

Ethicon argues that "[t]he 1-year rule in Section 1446(c)(1) applies <u>only</u> when a case was not <u>initially</u> removable under Section 1446(b)(1)" and that "[h]ere, Plaintiff's claims <u>were</u> initially removable on diversity grounds." (MTR Opp'n at 12 (emphasis in original).) As Judge Anderson noted in his order remanding several similar cases, any facial plausibility of this argument is based on its conflating "cases," "claims," and "actions." In fact, Plaintiff's <u>claims</u> were not initially removable on diversity grounds because § 1441 does not provide for the removal of individual claims, only for the removal of actions. <u>See</u> § 1441(a). While the removal statute at one time provided for removal of individual parts of an action, <u>see</u> 14 Stat. 306 (1866); <u>Yulee v. Vose</u>, 99 U.S. 539, 545-46 (1878), the statute has since been amended to remove these provisions, <u>see</u> 18 Stat. 470 (1875); <u>Barney v. Latham</u>, 103 U.S. 205, 212-213 (1880). Accordingly, there is little to recommend Ethicon's argument that the case stated by the initial pleading was removable.

Plaintiff unnecessarily clouds the dispute further by pointing out that the only authority cited in Ethicon's Removal Notice in support of this argument—<u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313 (9th Cir. 1998)—was decided under a prior version of the removal statute. (MTR at 12-13.) As noted above, case law construing statutory provisions should be interpreted with reference to the statutory text being interpreted. In this sense, Plaintiff's argument that § 1446 has been amended since <u>Ritchey</u> is quite persuasive. But the argument is less persuasive in light of the fact that Congress's subsequent amendment of § 1446 effectively codified the holding in <u>Ritchey</u>. <u>Compare Ritchey</u>, 139 F.3d at 1316 ("The first paragraph of § 1446(b) addresses a defendant's right to promptly remove when he is served. The second paragraph addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. Only the latter type of removal is barred by the one-year exception.") <u>with</u> 125 Stat. 758 (2011), Pub. L. 112-63 § 103(b)(3) (amending § 1446(b) by: (i) designating the first paragraph (b)(1); (ii) designating the second paragraph (b)(3); and (iii) specifying that the one-year exception only applies to (b)(3)).

The unnecessary complexity of the parties' arguments might lead one to believe that a truly difficult question is presented for the Court's resolution. However, the arguments on both sides amount to little more than distractions from what is a straightforward legal question. The thrust of the dispute between the parties is whether "the case stated by the

initial pleadings" is removable. The parties' preoccupation with this dispute is apparently premised on the assumption that an action may only be removed under § 1446(b)(1) if the case stated in the initial pleading is removable. As explained below, that is not a correct reading of § 1446(b)(1).

Section 1446(b)(1) provides that:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

§ 1446(b)(1).

This removal provision is supplemented by § 1446(b)(3), which provides that:

> Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

§ 1446(b)(3).

As the text of § 1446(b)(3) makes clear, a defendant may only take advantage of that provision "if the case stated by the initial pleading is not removable." However, nowhere is there any corresponding provision restricting the invocation of (b)(1) to situations where the case stated by the initial pleading <u>is</u> removable. The clear implication is that § 1446(b)(1) may be invoked irrespective of whether the initial pleading sets out a removable case, while § 1446(b)(3) is an alternative basis for removal that can only be invoked when the initial pleading is <u>not</u> removable.

Accordingly, under § 1446, if a defendant is served immediately upon commencement of an action with an initial pleading that is not removable and then, three weeks later, the same defendant is served with an amended pleading that states a removable case, that defendant can invoke either (b)(1) or (b)(3) in support of removal to federal court. If, on the other hand, a defendant is served with a non-removable initial pleading eleven and a half months after commencement of an action and then, three weeks later, the same defendant is served with an amended pleading that is removable, the defendant cannot remove under (b)(3). But that does not mean the defendant cannot remove under (b)(1). As long as such a defendant files for removal within 30 days after receiving the initial pleading, removal can be effected under § 1446(b)(1), irrespective of

whether a year has passed since the commencement of the action and irrespective of whether the initial pleading is removable.

As the Ninth Circuit stated quite succinctly in <u>Ritchey</u>:

> [§ 1446(b)(1)] addresses a defendant's right to promptly remove when he is served. [§ 1446(b)(3)] addresses a defendant's right to remove beyond the initial period of 30 days, if the case only becomes removable sometime after the initial commencement of the action. <u>Only the latter type of removal is barred by the one-year exception.</u>

<u>Ritchey</u>, 139 F.3d at 1316 (emphasis added).

Because removability of the initial pleading is not a prerequisite for removal under § 1446(b)(1), Ethicon need not rely on § 1446(b)(3) for removal unless the time for Ethicon to remove under § 1446(b)(1) has already passed. This is not the case. Ethicon has not missed its opportunity to remove under § 1446(b)(1) because Ethicon has never been served with process, as both parties acknowledge. (<u>See</u> Removal Notice, Wes Decl. ¶ 4; MTR, Sparks Decl. ¶ 2.) A named defendant's time for removal under § 1446(b)(1) does not begin to run until that defendant has been formally served.[8]

Of course, Ethicon most likely informally received a copy of the complaint in 2014. But this is insufficient to start the clock under § 1446(b)(1). In <u>Murphy Bros. v. Michetti Pipe Stringing</u>, 526 U.S. 344 (1999), the Supreme Court held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." 526 U.S. at 347-48. As the Court explained, "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." <u>Id.</u> at 350. In light of this longstanding tradition, "it would take a clearer statement than Congress has made . . . to effect so strange a change—to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of a summons." <u>Id.</u> at 356.

Because Plaintiff did not effect service of process on Ethicon, Plaintiff never started the clock running for Ethicon's removal under § 1446(b)(1), so Ethicon need not rely on § 1446(b)(3) for removal. Thus, § 1446(c)(1) is inapplicable and there is no need to address Ethicon's alternative arguments in support of the timeliness of its removal.

---

[8] Although Plaintiff does not argue that Ethicon's notice of removal was premature, the Court notes that such arguments have been rejected by other courts. <u>See, e.g.</u>, <u>Watanabe v. Lankford</u>, 684 F. Supp. 2d 1210, 1215 (D. Haw. 2010) ("[T]he filing of the notice of removal [by Terminix] before Plaintiffs served Terminix did not render the removal defective."); <u>accord</u> <u>Hutton v. KDM Transp., Inc.</u>, No. CIV.A. 14-3264, 2014 WL 3353237, at *4 (E.D. Pa. July 9, 2014) (collecting cases affirming a defendant's right to remove before formal service of process).

    **CIVIL MINUTES— GENERAL**    

**B.**   **Stay Pending Decision of Judicial Panel on Multidistrict Litigation Regarding Transfer**

Ethicon requests that this Court stay the action pending decision by the Judicial Panel on Multidistrict Litigation of whether to transfer this action to the Multidistrict Litigation Court in the Southern District of West Virginia ("MDL"). Although Plaintiff opposes the motion, the ground asserted by Plaintiff in opposition is that it would be more appropriate for the Court to rule on Plaintiff's motion to remand before addressing Ethicon's motion to stay. (<u>See generally</u> MTS Opp'n.) This ground for opposition is mooted by the Court's consideration and denial of Plaintiff's motion to remand. Plaintiff's counsel agreed during oral argument that, should Plaintiff's motion to remand be denied, a stay would be proper.

Accordingly, for the reasons set forth in Ethicon's motion, the Court finds that a stay is warranted.

## IV.   CONCLUSION

Plaintiff's motion to remand is DENIED. Ethicon's motion to stay is GRANTED. The case is STAYED pending decision by the Judicial Panel on Multidistrict Litigation whether to transfer the action.

Pursuant to stipulation by counsel, this decision shall govern each of the 59 open cases related to former case 2:14-cv-00899-JGB.

**CIVIL MINUTES— GENERAL**

Initials of Deputy Clerk MG
Time: <u>00:42</u>